United States District Court
District of Maine

| | |
|---|---|
| Richard C. Hickson,<br><br>      Plaintiff,<br><br>v.<br><br>Sherif Assal, and<br><br>Sherine Assal.<br><br>      Defendants. | Docket No.: |

## Complaint; Demand For Jury Trial

Plaintiff complains against the Defendants as follows:

### Summary of the Action

1. A jury in a Maine Superior Court action unanimously awarded Richard Hickson $210,000 against Vescom Corporation for firing him in violation of Maine's Whistleblowers' Protection Act. After the verdict was affirmed on appeal, Hickson obtained a writ of execution against Vescom for $399,346.83 and the amount due continues to increase. Vescom has failed to pay Hickson any of the state-court judgment amount he is owed and it has been found in contempt of court by the Maine State District Court for

intentionally refusing to comply with that court's orders in the disclosure proceedings filed by Hickson to enforce his money judgment against Vescom

2. This action is to pierce the corporate veil of Vescom in order to enforce the state-court judgment against its only two shareholders, Sherif Assal and Sherine Assal. The Assals misused the corporate form of Vescom, including the siphoning away of $1,102,000 in cash payments from Vescom to another corporation solely owned by them causing very thin capitalization of Vescom; the use of Vescom funds for personal expenses, including converting a $65,000 Lincoln Navigator automobile for their personal use; and the use of Vescom's funds to make interest-free loans of over $250,000 with no due date to other entities controlled by them. Defendants have abused the privilege of a separate corporate identity and an unjust and inequitable result would occur if the court recognized the separate corporate existence of Vescom.

## Parties and Personal Jurisdiction over Defendants

3. Richard C. Hickson is a citizen of the United States and a resident of Eastport, Maine.

4. Sherif Assal is a resident of California and 50% shareholder and officer of Vescom Corporation, which is and was at all relevant times headquartered in Hampden, Penobscot County, Maine. Sherif Assal has at least twice travelled to Maine to visit Vescom's corporate headquarter.

5. Sherine Assal is a resident of California and 50% shareholder and officer of Vescom Corporation, which is and was at all relevant times headquartered in Hampden, Penobscot County, Maine.

## Jury Trial Demand

6. Under Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury on all issues triable to a jury.

## Subject Matter Jurisdiction and Venue

7. This court has diversity jurisdiction under 28 U.S.C. 1332 because Plaintiff is a citizen of Maine and Defendants are citizens of California, and the amount in controversy exceeds $75,000.

8. Venue is proper in the District of Maine under 28 U.S.C. 1391(b)(2).

9. Under Local Rule 3(b), this action is properly filed in Bangor because this case arises in Penobscot County.

## Factual Allegations

### The Underlying Case and Jury Verdict

10. In 2007, Richard Hickson filed a complaint with the Maine Human Rights Commission against his former employer, Vescom, that in 2006 it fired him in retaliation for making a report protected by the Maine Whistleblowers' Protection Act (MWPA).

11. In 2008, Richard Hickson filed a court complaint against Vescom under the MWPA.

12. The 2008 complaint, which included claims that another defendant violated federal law, was filed in the United States District Court for the District of Maine.

13. In 2010, after all other defendants were dismissed from the case, the US District Court dismissed the claims against Vescom without prejudice for lack of subject matter jurisdiction.

14. Also in 2010, Mr. Hickson brought his claims under the MWPA against Vescom in the Washington County Superior Court of Maine.

15. In March 2013, a jury trial was held in the Superior Court.

16. The jury returned a unanimous verdict for Mr. Hickson in the amounts of $35,000 for compensatory damages and $175,000 for punitive damages.

17. On April 18, 2013, after awarding Mr. Hickson back pay and offsetting the jury verdict by the amount of an earlier settlement with other defendants, the Superior Court entered judgment for Mr. Hickson in the amount of $182,747.09.

18. Vescom appealed the Superior Court's judgment to the Maine Supreme Judicial Court sitting as the Law Court (Law Court)

19. On February 25, 2014, the Law Court denied Vescom's appeal

and affirmed the Superior Court judgment in Mr. Hickson's favor. 2014 ME 27, 87 A.3d 704.

20. On July 15, 2014, the Superior Court ordered that the judgment be amended to add $216,599.74 for Mr. Hickson's attorneys' fees and costs.

21. Vescom's total judgment debt to Mr. Hickson is in the amount of $399,346.83 plus additional attorneys' fees and expenses and interest. On about September 26, 2014, the Superior Court issued an amended writ of execution for Hickson against Vescom in the amount of $399,346.83.

22. In September 2014, Hickson filed a disclosure proceeding in the Maine State District Court, docket number BANDC-SA-2014-797. On December 5, 2014, the Maine State District Court issued a written order finding Vescom in contempt for intentionally violating the court's orders of September 10, 2014, September 11, 2014, October 9, 2014 and October 14, 2014.

23. Vescom has failed to pay any amount of its debt to Mr. Hickson and it lacks the funds to pay its judgment debt to Mr. Hickson.

### The Undercapitalization of Vescom and Siphoning of Capital to Sherine and Sherif Assal

24. Siblings Sherif and Sherine Assal (the Assals) have, between them, 100% ownership of a number of interrelated entities, including Vescom.

25.     While Mr. Hickson's claims against Vescom were working their way through the courts, the Assals, the sole shareholders of Vescom, conspired to extract all capital and profits from Vescom so there would be no funds available to pay Mr. Hickson if his legal claims prevailed.

26.     After Mr. Hickson initiated legal action against Vescom, the Assals arranged to require Vescom to pay so-called "management fees" to Worldwide Sourcing Group, Inc. (WSG), another corporation whose sole shareholders were Sherif and Sherine Assal.

27.     The "management fees" paid to WSG were based on a percent of Vescom's receipts, and were calculated to leave Vescom the bare minimum amount of capital required for day-to-day operation of the company, leaving Vescom without the capital to pay any court judgment.

28.     The "management fees" left Vescom grossly undercapitalized for a business that had more than 1,000 employees and no insurance for employment liability.

29.     The Assals told Pamela Treadwell, Vescom's Vice President, that the "management fees" were being taken by the Assals to pay themselves back for their investment in purchasing Vescom.

30.     The agreement to pay "management fees" was made between the Assals, without an independent representative to protect Vescom's interests.

31. One agreement under which the "management fees" were paid to WSG was signed only by Sherif Assal and Sherine Assal and no independent representative was present to protect the interest of Vescom.

32. The management services WSG promised in the management agreement continued to be performed by Vescom employees but Vescom paid the "management fees" even though it did not receive management services in return.

33. For example, the management agreement promised that "the recruitment, employment, and dismissal of all employees of the Company working in the Business" would be WSG's "authority, power[], dut[y] and responsibility[y]" but all recruitment, employment and dismissal of employees continued to be performed by employees of Vescom.

34. The management agreement also promised to "handle all Legal matters on behave[sic] of the company." However, Vescom continued to pay for at least some of its own legal services.

35. In 2010, Vescom paid $282,000 in "management fees" leaving Vescom with only $59,379 net profit after $19,690,076 in sales.

36. In 2011, Vescom paid $310,000 in "management fees" leaving Vescom, after $21,834,010 in sales, with only $44,006 in net profit.

37. In 2012, Vescom paid $510,000 in "management fees" leaving Vescom with a net loss of $11,529 after $23,519,653 in revenue.

38. Near the time of the jury verdict for Mr. Hickson in 2013, the Assals decided to voluntarily pay $450,000 to compensate a large client for a theft that was allegedly assisted by a Vescom employee.

39. To make the $450,000 payment, the Assals unilaterally reduced the "management fees" from $510,000 the previous year to only $50,000, thus leaving Vescom the capital it needed to make the payment.

40. The Assals waived the "management fee" to make this preferred payment even though there was no legal action pending against Vescom for this amount.

### The Assals Further Abused Vescom's Corporate Form By Using It as a Piggy Bank for Other Assal Entities

41. The Assals used their control of Vescom to require it to make interest-free loans with no due date to the Assals' other business entities.

42. In 2012, Vescom was owed a combined $282,081 of interest-free loans with no due date to four other entities that were wholly owned and controlled by the Assals.

43. In 2013, Vescom was owed a combined $251,946 of interest-free loans with no due date to other Assal entities.

44. The interest free loans and other intercompany dealings were conducted without independent representatives to protect the individual interests of Vescom and the other corporations.

### Vescom, Against Its Corporate Interests,
### Was Put In the Financial Control of a
### Multiple Felon to Personally Benefit The Assals

45. The Assals disregarded Vescom's corporate interests by secretly allowing Vescom to be controlled financially by Ousama W. Karawia who goes by the name Sam W. Karawia.

46. Karawia is Sherine Assal's ex-husband and they have children together.

47. In December 2012 Karawia was convicted of seven felonies including grand theft, two counts of felony insurance fraud, and felony possession of illegal assault weapons

48. Mr. Karawia's felonies of grand theft and fraud were committed as part of Mr. Karawia's operation of another security services company and all of his licenses to participate in the security industry were suspended or revoked.

49. Mr. Karawia was debarred from federal contracting for three years starting in 2008, including part of the time he was controlling Vescom's finances, for repeatedly failing to pay the employees of another security services company the legally required minimum wage and benefits.

50. Mr. Karawia was responsible for assigning felons to guard the Statue of Liberty shortly after September 11, 2001.

51.  The "management fee" scheme was designed by felon Ousama Karawia in order to enrich the shareholders at the expense of Vescom's ability to function

### The Assals Used Vescom Funds for Personal Expenses

52.  The Assals used Vescom funds for personal expenses, including commandeering $65,000 Lincoln Navigator automobile owned by Vescom for their personal use.

53.  Sherif and Sherine Assal have abused, dominated, and misused Vescom's corporate form.

54.  As a result of the Assals actions, Vescom lacks sufficient funds to pay its judgment debt to Mr. Hickson.

55.  If the separate corporate existence of Vescom is recognized, a unanimous jury's verdict under an important civil rights law of the State of Maine will be rendered a nullity. Such a result would undermine the important public policies underlying the Maine Whistleblowers' Protection Act and would produce an unjust and inequitable result.

### Legal Claim

56.  The allegations in paragraphs 1-55 are repeated.

57.  Based on these allegations, Defendants have (1) dominated, abused, and misused the corporate form of Vescom and abused the privilege

of Vescom's separate corporate identity; and (2) an unjust or inequitable result will occur if the court recognizes the separate corporate existence of Vescom.

    58.    Plaintiff requests relief as follows:

    a.    Entry by the Court of declaratory relief that Defendants are each personally liable for the full amount of Vescom's state-court judgment debt to Richard C. Hickson;

    b.    Entry by the Court of judgment against Defendants for the full amount of Vescom's state-court judgment debt to Richard Hickson; and

    c.    Such further relief as deemed appropriate by the Court

Date: January 5, 2015        /s/ David G. Webbert
David G. Webbert,
JOHNSON & WEBBERT, YOUNG, L.L.P.
160 Capitol Street, P.O. Box 79
Augusta, Maine  04332-0079
Tel:  (207) 623-5110
E-Mail: dwebbert@johnsonwebbert.com

Date: January 5, 2015        /s/ Max R. Katler
Max R. Katler
JOHNSON & WEBBERT, & YOUNG,  L.L.P.
160 Capitol Street, P.O. Box 79
Augusta, Maine  04332-0079
Tel:  (207) 623-5110
E-Mail: mkatler@johnsonwebbert.com
*Attorneys for Plaintiff*